UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SUZANNE K. TAYLOR,

                      Plaintiff,

  -vs-                                                  09-CV-257-JTC

HARBOUR POINTE HOMEOWNERS
ASSOCIATION and CANDACE GRASER,

                      Defendants.

---

In this action, plaintiff Suzanne K. Taylor seeks declaratory judgment, injunctive relief, and damages pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and New York State common law, based on allegations of disability discrimination, trespass, and conversion against the Harbour Pointe Homeowners' Association ("HPHA") and one of its officers, Candace Graser. Defendants have moved for summary judgment (Item 23) dismissing the complaint in its entirety.

For the reasons that follow, defendants' motion is granted.

## **BACKGROUND**

The following facts are derived from plaintiff's complaint (Item 1), defendants' "Statement of Undisputed Material Facts" (Item 24) submitted in accordance with Rule 56.1 of the Local Rules of Civil Procedure for the Western District of New York,[1] and excerpts

---

[1] Local Rule 56.1(a) requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried . . . ," and Local Rule 56.1(b) requires that the party opposing the motion include in its opposition papers "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." As the Second Circuit has noted, "[w]hen a party has moved for summary judgment . . . and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried,

from deposition transcripts and other exhibits attached to the parties' submissions (*see* Items 25, 33, 37).

Plaintiff owns a home in the Buffalo, New York, waterfront community known as Harbour Pointe. The community is subject to the management oversight of the HPHA, which is comprised of member homeowners at Harbour Pointe. Ms. Graser was, at all relevant times, an officer on the board of the HPHA, and served as President of the HPHA during the time when the events giving rise to the claims in this action took place.

Those events relate primarily to Ms. Graser's conduct in response to HPHA members' complaints about the appearance of both the exterior of plaintiff's unit and the contents of plaintiff's glass-enclosed patio, which was visible from the main road of the community. Plaintiff does not dispute that she was made aware of the problem, but she alleges that she suffers from clinical depression, specifically diagnosed as "Major Disorder Recurrent," which "prevents her from maintaining her residence in a tidy manner." Item 1, ¶¶ 8, 10.

In August 2005, while she was staying with a friend following the death of her dog, plaintiff had a telephone conversation with Ms. Graser regarding the appearance of her patio. Ms. Graser suggested moving a barbecue and other visible items to storage, and placing trellises or lattice over the outside of the glass enclosures to "disguis[e] the

---

those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992); *see also* Local Rule 56.1(c) (material facts set forth in statement served by moving party deemed admitted unless controverted by opposing party's statement).

In response to defendants' summary judgment motion in this case, plaintiff submitted a memorandum of law with several attachments, including excerpts from deposition transcripts and excerpts from plaintiff's medical records (*see* Items 32, 33). In her memorandum, plaintiff takes issue with certain facts set forth in defendants' Local Rule 56.1(a) Statement, but plaintiff has not submitted the separate statement required by Local Rule 56.1(b) to properly controvert those facts. Accordingly, the facts set forth in defendant's Local Rule 56.1(a) Statement are deemed admitted to the extent they are supported by the record evidence. *See Bonilla v. BOCES*, 2010 WL 3488712, at *1 (W.D.N.Y. Sept. 2, 2010).

clutter . . . ." Item 25, Ex. H, pp. 57-58. Plaintiff told Ms. Graser to "do whatever you need to do . . . ." *Id.* at 58; *see also* Item 1, ¶¶ 14-15.

In May 2008, while plaintiff was in Florida on an extended visit with her ailing mother, Ms. Graser sent plaintiff an e-mail message, which read in part:

> There are a few housekeeping problems at Harbour Pointe. There are 3 units for sale and your porch is the subject of discussion. Last time we discussed the issue you said "do what you have to do" and I put up lattice as a visual barrier. Can I again handle the issue without offending you?

Item 33, Ex. A7. Plaintiff responded:

> I was working on it, but spending the last five weeks in Florida has really killed any progress I was making. I'll be home for good on Friday [May 23] . . . and I'll just have to prioritise [sic] that. I really expected to have an empty garage by the time the snow was all gone so I could "hide" everything, but that ain't happening.

*Id.*

Upon her return home from Florida in early June 2008, plaintiff had a conversation with Ms. Graser during which she explained that she was "trying to make progress on the visible parts of [her] home" (Item 25, Ex. G., p. 16), and had planned to rent a dumpster at the end of the summer which she suggested could be shared by other homeowners. Ms. Graser advised plaintiff that the matter needed to be taken care of immediately in order to address the complaints of the neighbors whose units were up for sale, as well as the concerns of the realtors and prospective buyers. *See id.* at Ex. H, p. 88. Ms. Graser suggested putting up sheer curtains on the inside of the patio windows, and "came away from that conversation . . . with the impression or the knowledge that I could address the mess." *Id.* at p. 89.

Shortly after this conversation with Ms. Graser in early June, plaintiff went to Ithaca to attend her college reunion. Her next door neighbor, Norman Cramp, noticed that she had left her garage door open. Mr. Cramp tried calling plaintiff, but she did not respond. He sent her an e-mail on June 4, stating, "Suzanne, if you're still in Buffalo, you left your garage door up." Item 25, Ex. G, p. 119. Plaintiff responded the next day:

> Rats, I must have double hit it when I was leaving because I did close it, just didn't look to see if it actually worked; inside the patio door, there's a box immediately to the left… there is a Gray garage door closer sitting right there just to make it easier.

Item 25, Ex. G, p. 119.

In the meantime, Mr. Cramp contacted Ms. Graser to discuss what to do about the open garage door. They met in front of plaintiff's unit in the early evening of June 4, along with another neighbor, George Woepperer. They entered plaintiff's enclosed patio through a sliding glass door which had been left open, and then entered the residence using a key that plaintiff had given to Mr. Cramp. After they closed the garage door from the inside, they returned to the patio area and decided to straighten things up so Ms. Graser could access the windows from the inside in order to measure for the sheers. They rearranged boxes, moved some boxes to the garage, discarded some cardboard and old newspapers, and cleaned out debris, and Ms. Graser was able to do the measurements. *Id.*, Ex. I, pp. 27-29; Item 33, Ex. B2, pp. 90-95.

Plaintiff returned home on June 10, 2008, to find that "many of the contents of her patio had been cleared out." Item 1, ¶ 30. She sent an e-mail that day to Ms. Graser and the HPHA to complain about the "trespass," *id.* at ¶ 33, and called the police. She later

filed a police report about the incident, but did not press charges. *See* Item 33, Ex. A, pp. 107-13.

On August 4, 2008, plaintiff filed a verified complaint with the U.S. Department of Housing and Urban Development ("HUD") and the New York State Division of Human Rights ("NYSDHR") charging the HPHA with discriminatory housing practices because of her disability, in violation of the FHA and Article 15 of the New York Human Rights Law. *See* Item 2, Ex. A. On October 28, 2008, NYSDHR issued a "Determination and Order After Investigation," finding no probable cause to believe that the HPHA engaged in the unlawful discrimination practice complained of. *See id.* Specifically, NYSDHR found "no evidence of [plaintiff's] disability or that the accumulation of and/or clearing away of clutter is related to a disability." This determination was affirmed by HUD on or about November 19, 2008. *See* Item 2, ¶ 16.

Plaintiff then filed this action on March 19, 2009, alleging that defendants HPHA and Ms. Graser "fail[ed] to accommodate Plaintiff . . . for her disability," which exacerbated her depression by causing "embarrassment" and certain forms of "economic damage," in violation of the FHA. See Item 1, ¶¶ 60-61. She also alleges that defendants' conduct in entering her residence and removing or rearranging her personal items as described above gives rise to causes of action for trespass to real property (*id.* at ¶¶ 63-64), trespass to chattels (*id.* at ¶¶ 66-67), and conversion (*id.* at ¶¶ 69-70).

Upon the conclusion of discovery, defendants filed the present motion for summary judgment dismissing the complaint on the ground that plaintiff has failed to establish a *prima facie* case of refusal to reasonably accommodate her disability under the FHA.

Defendants also request that upon dismissal of the federal claim the court decline to exercise supplemental jurisdiction over the common law trespass and conversion claims, and argue in the alternative that those claims fail on their merits.

## DISCUSSION

I.	**Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 89 (2d Cir. 2001).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 574 (2d Cir. 2005). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*,

77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient and "[t]here must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts . . .' " to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 500 U.S. 928 (1991).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005). "In examining the record it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." *Gallo*, 22 F.2d at 1224 (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). In this case the substantive law is the FHA.

**II.  The Fair Housing Act**

The FHA, enacted in 1968, originally prohibited discrimination on the basis of race, color, religion, or national origin. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n. 1 (1995). In 1988, Congress enacted the Fair Housing Amendments Act ("FHAA") which extended the FHA's coverage to individuals with disabilities, making it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection with such dwelling,

because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Among the discriminatory practices prohibited by the FHAA is "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *City of Edmonds*, 514 U.S. at 729; *see also Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 344 (E.D.N.Y. 2005).

To establish a *prima facie* claim of refusal to reasonably accommodate under Section 3604(f)(3)(B), plaintiff must show that: (1) she suffers from a handicap as defined in 42 U.S.C. § 3602(h);[2] (2) defendants knew of her handicap or should reasonably be expected to know of it; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. *United States v. California Mobile Home Park Management Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997); *Bentley*, 367 F. Supp. 2d at 345.

As explained in *Prindable v. Ass'n of Apt. Owners*, 304 F. Supp. 2d 1245 (D.Haw. 2003), *aff'd sub nom. DuBois v. Ass'n of Apt. Owners*, 453 F.3d 1175 (9th Cir. 2006):

> The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have been given an opportunity to make a final decision with respect to Plaintiffs' request, which necessarily includes the

---

[2]Section 3602(h) provides:

"Handicap" means, with respect to a person--

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
(2) a record of having such an impairment, or
(3) being regarded as having such an impairment . . . .

42 U.S.C. § 3602(h).

ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law. . . .

Until an accommodation request is denied, there is no discrimination under § 3604(f)(3)(B).

*Prindable*, 304 F. Supp. 2d at 1258 (citations, internal quotation marks, and alterations omitted). In other words, "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999) (holding that an employee must request an accommodation and be denied prior to bringing a reasonable accommodation claim under Title I of the ADA); *Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1222 (11th Cir.1992) (reaching same conclusion under Rehabilitation Act)).

In this case, the record is clear that plaintiff did not make a "sufficiently direct and specific request" to put defendants on notice that an accommodation of plaintiff's disability might be necessary to afford her an equal opportunity to the use and enjoyment of her dwelling. *Colon-Jimenez v. GR Management Corp.*, 218 Fed. Appx. 2, 3 (1st Cir. 2007) (citing *Gill v. Franklin Pierce Law Center*, 899 F. Supp. 850, 855 (D.N.H. 1995)). For example, in her written rebuttal to defendants' response to the HUD/NYSDHR charge, plaintiff wrote:

> I never notified the [HPHA] that I required special accommodation, because I did not *need* special accommodation. The [HPHA] has no *authority* to tell me what I can and can not have on my patio, therefore I needed no special accommodation regarding its condition. Again, I carefully read the bylaws to be sure that I could obey them as they are.

Item 25, Ex. J, p. 5 (emphasis in original). Plaintiff also testified at her deposition as follows:

> Q: Regarding the request for accommodations, what is it that you request[ed] the [HPHA] do for you?
>
> A: Well, the [HPHA] has no authority whatsoever to tell me under what conditions I can keep my patio or what can be on my patio, so I didn't ask for any special accommodations with regard to the patio because they had no authority to tell me.
>
> Q: So there was no request?
>
> A: There didn't need to be a request because I was protected by the bylaws and the limits on the authority of the board. . . .
>
> [T]his is how I explained it to [Ms. Graser] when she asked if they could clear out my patio - - that my recovery has to be at my own pace and my own doing because outside interference, somebody coming and cleaning out my patio, sets me back in my recovery because instead of making progress that I can be proud of and building upon that to pull me out of my depression more, all it does is isolate me, make me feel accused and judged and it makes it that much harder for me to make any progress at all.

*Id.* at Ex. G, pp. 25-26; Item 33, Ex. A, p. 27.

Ms. Graser testified at her deposition that plaintiff did not specifically tell her that she suffered from depression, or "that it was important for her to take care of the situation herself at her own time . . . ." Item 25, Ex. H, pp. 88-89. However, even resolving all ambiguities and drawing all reasonable inferences in favor of plaintiff in this regard, no reasonable juror could conclude that plaintiff's statement about the need to recover at her own pace without outside interference entails a sufficiently specific request to trigger defendants' duty to provide a reasonable accommodation within the meaning of the FHAA. Rather, this statement–assuming it was actually made–represents little more than an effort to make Ms. Graser generally aware that helping plaintiff clean her patio might somehow

compromise her recovery from depression.  In the absence of a more specific request that might have provided defendants the opportunity to conduct a meaningful review with respect to reconciling the need for orderly exterior appearance of housing units in the Harbour Pointe community with the requirements of disability discrimination law, defendants' general awareness of plaintiff's depression does not transform her desire to be left alone into a request for reasonable accommodation.

In addition, to succeed on her FHAA claim, "[p]laintiff[ ] must show that, but for the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996) (quoted in *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 578 (2d Cir. 2003)). Plaintiff has come forward with no testimony or evidence, beyond her own conclusory statements, to indicate how "somebody coming and cleaning out [her] patio . . . sets [her] back in [her] recovery" in such a way that could be viewed by a rational juror as a denial of an equal opportunity to use and enjoy her dwelling.  In light of her representation to the administrative agencies investigating her discrimination charge–repeated in her deposition testimony in this action–that she never requested an accommodation for her depression because she did not need one, no rational juror could conclude that plaintiff's explanation to Ms. Graser about the need to deal with the visible clutter in her patio at her own pace is  a sufficiently direct and specific request for a reasonable accommodation of her disability.  To put it simply, in the absence of an actual request for a reasonable accommodation there can be no denial, and in the absence of a denial "there is no discrimination under § 3604(f)(3)(B)." *Prindable*, 304 F. Supp. 2d at 1258.

Based on this analysis, the court finds that plaintiff has failed to come forward with sufficient evidence to make even a *prima facie* showing that defendants refused her request for accommodation of her depression, and therefore no reasonable jury could find in her favor on her claim of disability discrimination under the FHA. Accordingly, as there are no genuine issues of material fact to be tried, defendants are entitled to summary judgment dismissing that claim as a matter of law.

## III.     Supplemental Jurisdiction Over Remaining Common Law Claims

In addition to her FHA claim, plaintiff asserts common law claims for trespass to real property, trespass to chattels, and conversion. This court's jurisdiction over these claims is governed by 28 U.S.C. § 1367, which states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3).

In deciding whether to exercise jurisdiction over supplemental state law claims, the court should consider and weigh in each case . . . the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)).

> When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit

in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Cohill*, 484 U.S. at 350.

Plaintiff has not shown, or even argued, that consideration of the factors identified in *Cohill* supports the exercise of supplemental jurisdiction over her common law trespass and conversion claims in this case. Accordingly, because the federal claim has been dismissed on summary judgment, the court declines to exercise supplemental jurisdiction over the common law claims.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Item 23) is granted, and plaintiff's FHA claim is dismissed with prejudice. The court declines to exercise supplemental jurisdiction over plaintiff's remaining claims based upon common law trespass and conversion, and those claims are dismissed without prejudice.[3]

The Clerk of the Court is directed to enter judgment in favor of defendants.

So ordered.

/s/ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 2/16 , 2011
p:\pending\2009\09-257.feb7.2011

---

[3] Defendants also filed a motion (Item 35) to strike portions of plaintiff's opposing memorandum of law and attached exhibits. In light of the court's ruling on defendants' summary judgment motion, the motion to strike is denied as moot.